# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

Anthology, Inc., a Florida corporation,

    Plaintiff,

v.

Merrick Garland, in his official capacity as Attorney General of the United States,

Alejandro Mayorkas, in his official capacity as Secretary of the U.S. Department of Homeland Security,

Ur Mendoza Jaddou, in her official capacity as Director of U.S. Citizenship and Immigration Services,

Tracy Tarango, in her official capacity as Director of the USCIS California Service Center,

    Defendants.
_____/

Civil Action No.

**COMPLAINT FOR DECLARATORY RELIEF AND REVIEW OF AGENCY ACTION UNDER THE ADMINISTRATIVE PROCEDURE ACT**

## INTRODUCTION

1. Plaintiff Anthology, Inc. ("Anthology" or "Plaintiff") brings this action challenging the denial by U.S. Citizenship and Immigration Services ("USCIS") of Plaintiff's I-129, Petition for a Nonimmigrant Worker (hereafter "petition") seeking to classify Ms. Maryorie Pavon Galeas (hereinafter "Ms. Pavon Galeas" or "Beneficiary") as an L-1B, intracompany transferee with specialized knowledge.

2. Plaintiff Anthology submitted its L-1B petition to USCIS on November 14, 2022. On November 21, 2022, USCIS issued a Request for Evidence ("RFE") and Plaintiff Anthology responded on February 23, 2023. USCIS denied the petition on March 10,

2023 arguing that Plaintiff had failed to demonstrate that the Beneficiary's qualifications and positions could be classified as specialized knowledge.

3. Defendants denied the L-1B petition after arbitrarily and capriciously determining that Plaintiff Anthology failed to demonstrate that the Beneficiary's qualifications and prior positions could be classified as requiring specialized knowledge.

4. The legal standard of review for approval of an L-1B petition is a preponderance of the evidence. Anthology sufficiently demonstrated that Beneficiary, in the foreign position of Business Development and Innovation Manager, as well as the sponsored U.S. position of Director of Business Development, qualifies as specialized knowledge worker by the preponderance of the evidence.

5. In support of its petition, Plaintiff Anthology submitted nearly 500 pages of evidence, including a detailed job description outlining the specialized knowledge used by Beneficiary, letters confirming duties and experience, certifications, emails, samples of work product, and job descriptions of other employees in the Beneficiary's department.

6. Anthology submitted this evidence to demonstrate that the Beneficiary's qualifications, position in Brazil, and the offered position in the United States fall within the definition of specialized knowledge.

7. Plaintiff respectfully requests that this Court vacate the denial of Plaintiff Anthology's petition as arbitrary, capricious, and an abuse of discretion and otherwise not in accordance with law, 5 U.S.C. § 706, and direct USCIS to approve the L-1B petition submitted on behalf of Ms. Pavon Galeas.

**JURISDICTION AND VENUE**

8. This case arises under the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1101 *et seq.*, and the Administrative Procedure Act ("APA"), 5 U.S.C. § 701 *et seq*. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 (federal question jurisdiction). This Court also has authority to grant declaratory relief under 28 U.S.C. §§ 2201-02 and injunctive relief under 5 U.S.C. § 702. The United States waives sovereign immunity under 5 U.S.C. § 702.

9. Venue is proper in this judicial district under 28 U.S.C. § 1391(e)(1)(C) because this is a civil action (1) in which Defendants are officers of the United States, acting in their official capacity, or an agency of the United States, (2) the Plaintiff resides in the District; and (3) there is no real property involved in this action.

**PARTIES**

10. Plaintiff Anthology is a corporation incorporated in the State of Florida and with its principal place of business in Boca Raton, Florida. Since 1988, Plaintiff Anthology has developed and implemented solutions to betters support the ever-changing needs of higher education.

11. Plaintiff Anthology filed the L-1B petition at issue here on behalf of Ms. Maryorie Pavon Galeas. An L-1B petition is sponsored by an employer, and while an employee has a personal interest in the petition, employees are only a beneficiary of the petition. Therefore, Ms. Pavon Galeas is not a party to this action.

12. Defendant Merrick Garland is the Attorney General of the United States, and he is sued in his official capacity.

13. Defendant Alejandro Mayorkas is the Secretary of the U.S. Department of Homeland Security (DHS) and is sued in his official capacity. DHS oversees USCIS.

14. Defendant Ur Mendoza Jaddou is the Director of U.S. Citizenship and Immigration Services and is sued in her official capacity. In this role, she oversees the adjudication of immigration benefits and establishes and implements governing policies of Agency. The USCIS Director has ultimate responsibility for the adjudication of Plaintiff Anthology's L-1B petition.

15. Defendant Tracy Tarango is the Director of the California Service Center and is sued in her official capacity. She is responsible for overseeing decisions on immigration benefit applications, petitions and requests, through written correspondence and in-person interviews with applicants, petitioners, and beneficiaries. She leads the specific office within USCIS that denied the Plaintiff's L-1B petition on behalf of the Beneficiary.

## LEGAL BACKGROUND

*L-1B Requirements and Adjudication*

16. Section 101(a)(15)(L) of the Immigration and Nationality Act ("INA") authorizes the U.S. Department of Homeland Security ("DHS") to admit into the United States temporary workers who, "within 3 years preceding the time of application for admission into the United States, have been employed continuously for one year by a firm or corporation or other legal entity or an affiliate or subsidiary thereof and who seeks to enter the United States temporarily in order to continue to render his services to the same employer or a subsidiary or affiliate thereof in a capacity that . . . involves specialized knowledge[.]" 8 U.S.C. § 1101(a)(15)(L). This nonimmigrant classification (a visa with a short-term purpose) is commonly referred to as "L-1B."

17. The INA defines "specialized knowledge" as "special knowledge of the company product and its application in international markets or has an advanced level of knowledge of processes and procedures of the company." 8 U.S.C. § 1184(c)(2)(B).

18. An L-1B petition must include the following: (1) a completed Form I-129, Petition for a Nonimmigrant Worker, which is a U.S. Citizenship and Immigration Services (USCIS) form for employment-based petitions; (2) supporting evidence, which includes a description of the offered position and proof the Beneficiary qualifies for that position (often in the form of diplomas, transcripts, letters, work product samples, emails, etc.); and (3) evidence of the qualifying corporate relationship between the U.S. entity and the foreign entity.

19. The L-1B petitioner must demonstrate that 1) there is a qualifying relationship between the U.S. and foreign entities, 2) the beneficiary has at least one continuous year of full-time employment abroad with a qualifying entity, 3) both the U.S. and foreign positions qualify as requiring specialized knowledge, and 4) the beneficiary possesses the required specialized knowledge. *See* 8 C.F.R. § 214.2(l)(3).

20. The regulation defines "specialized knowledge" as "special knowledge possessed by an individual of the petitioning organization's product, service, research, equipment, techniques, management or other interests and its application in international markets, or an advanced level of knowledge expertise in the organization's processes and procedures." 8 C.F.R. § 214.2(l)(1)(ii)(D).

21. Upon reviewing an L-1B petition, USCIS can request additional information or documentation before making a final decision, which it did in the instant case and the Plaintiff responded.

22. Immigration Services Officers at USCIS are required to apply a preponderance of the evidence standard when evaluating eligibility for the benefit sought. *See INS v. Cardoza-Fonseca*, 480 U.S. 421 (1987). Thus, if the petitioner submits relevant, probative, and credible evidence that leads USCIS to believe that the claim is "more likely than not" or "probably true," the petitioner has satisfied the standard of proof. *Id.*

23. This standard of proof is also noted in the USCIS Policy Manual, Volume 1: General Policies and Procedures, Chapter 4 (Burden of Proof and Standard of Proof).

24. In the instant case, USCIS did not adequately explain why it is more likely than not that the beneficiary and the U.S. and foreign positions do not qualify as having and involving specialized knowledge. USCIS appears to be applying a higher evidentiary standard in its review of the Plaintiff's petition.

## FACTUAL ALLEGATIONS

*Plaintiff Anthology*

25. Established in 1988 as Campus Management, Plaintiff Anthology, is an education technology company with over 700 employees in the United States. In 2020, Campus Management joined together with Campus Labs and iModules to form Anthology. Subsequently, in October 2021, Anthology merged with Blackboard to become an innovator of educational technology supporting students and faculties from Kindergarten to Twelve grade to higher education and beyond.

*Maryorie Pavon Galeas's employment with Blackboard Brazil*

26. Maryorie Pavon Galeas earned a bachelor's degree in Industrial and Systems Engineering in 2011 from the Universidad Technologica Centroamericana in Brazil. In 2016, she received her first master's degree in Project Management from the

6

Universidad Technologica Centroamericana, and in 2022, she received her second master's degree in Leadership, Innovation, and Management from Pontifica Universdidade Catolica do Rio Grande do Sul in Brazil.

27. Ms. Pavon Galeas began working for Blackboard Brazil as a Client Project Manager in March 2020 and was subsequently promoted to a Business Development and Innovation Manager responsible for explaining, presenting, and proving the value of the organization's solutions to its clients.

28. Ms. Pavon Galeas has demonstrated her ability not only to manage a portfolio of projects on a large scale in the Latin America region, but she has also managed multiple solutions with clients. She has led and managed over 30 projects to enhance learning among over 100 institutions in Latin America.

29. Ms. Pavon Galeas is a significant contributor to the organization's research and development in Latin America. The leadership and knowledge of Ms. Pavo Galeas has resulted in two new analytics services, five new educational services, two strategy services, two technical services and two training services over the course of the previous two years.

*Plaintiff Anthology's L-1B Petition*

30. On November 14, 2022, Plaintiff Anthology properly submitted to USCIS its L-1B petition on behalf of Ms. Pavon Galeas for consideration as an intracompany transfer possessing specialized knowledge. Exhibit 1. Anthology filed the L-1B petition because Ms. Pavon Galeas has specialized knowledge and skills that would benefit and contribute to Anthology's U.S. operations. The petition included 279 pages of

documentation supporting Ms. Pavon Galeas's specialized knowledge. The petition was receipted as WAC-23-039-50697. Exhibit 2.

31. Plaintiff Anthology included the following documentation in support of its L-1B petition on behalf of Ms. Pavon Galeas:

    - A letter from Ms. Pavon Galeas' manager in Brazil outlining the unique and advanced knowledge Ms. Pavon Galeas possesses, as well as how she has utilized this knowledge in her role in Brazil.
    - Corroborating evidence including emails and slide decks demonstrating how Ms. Pavon Galeas uses her unique and advanced knowledge in her position.
    - A letter from the proposed manager in the United States detailing what Ms. Pavon Galeas's role will be and how her unique and advanced knowledge will be used.
    - A November 1, 2022 letter from the company's Director, Global HR Consulting and Delivery, describing in detail the relationship between Blackboard Brazil and Anthology, the duties of the Business Development and Innovation Manager position, the duties of the Director of Business Development, and Ms. Pavon Galeas's qualifications.

32. On November 21, 2022, USCIS issued a Request for Evidence (RFE), where it erroneously claimed that Plaintiff Anthology had not met any of the regulatory criteria to qualify for an L-1B visa. The RFE included suggestions as to the type of evidence that Plaintiff Anthology could include to establish each of the regulatory criteria. The response was due April 17, 2023, when including the sixty-day grace period granted during the COVD-19 pandemic by USCIS. Exhibit 3.

33. USCIS received Plaintiff Anthology's timely RFE response on February 24, 2023, which included 214 pages of additional evidence demonstrating that the petition satisfied all regulatory criteria for demonstrating that a position falls within the specialized knowledge requirements for an L-1B. Exhibit 4. In the 493 pages of evidence, Plaintiff Anthology demonstrated that Ms. Pavon Galeas's position with Blackboard Brazil involved specialized knowledge of Anthology's products and

8

services, as well as its application in international markets, thus, satisfying 8 C.F.R. § 214.2(l)(1)(ii)(D). Her role in Blackboard Brazil was responsible for the development of products in the Latin American market. Plaintiff Anthology also demonstrated that her U.S. role would involve specialized knowledge of Anthology's product since the role requires utiliziation and knowledge regarding international regulations, as well as of Anthology's suite of projects developed with Blackboard Brazil.

34. As part of its RFE response, Plaintiff Anthology included a letter from Ms. Pavon Galeas's current manager at Blackboard Brazil, which incorporated and expanded upon the detailed description of job duties for the Business Development and Innovation Manager initially provided. Exhibit 4. Those job duties were:

- Maintaining expert level knowledge and proficiency in Blackboard products and services, including their functionality, application, administration and deployment methodologies (10%).
    - Continuous training and involvement on the current releases of products to share with clients up to date information of products and services. Making sure to provide the right information based on client need.
- Maintaining familiarity with partner solutions and knowing to propose them as part of a customer solution set (15%).
    - Knowledge regarding what we can offer though our partners or internally to attend client needs culturally speaking, language need, and expertise.
- Participating in client discovery calls, listening to customer desires, and creating account value proposals that relate proposed solutions to customers' strategic goals and initiatives (10%).
    - Creating presentations based on client context and actively positioning services in client meetings based on the institutional vision. Making sure to not sell for a value in numbers but for quality and value add.
- Preparing and delivering high-quality presentations to include tailored solutions, configurations, and scenarios to support customer requirements (5%).
    - Providing different options which an support in the client language and considering company language that included resource, tools, research on the options that can be provided with different related teams such as Product team, Client Experience team, and solutions engineers.
- Working with all members of the regional sales teams to articulate solutions strategic value, develop personalized client-focused solutions and document solutions in proposals (15%).

- o Providing insights participating with clients to guide the strategic value and position the why, how and who needed to be involved to share at the institution level.
- Providing rapid, accurate responses to questions from sales teams and channel partners (5%).
  - o Regarding scope, process, discounts, which teams needed to be involved. Collaboration with contracts, deal consultation team and client experience.
- Providing insight, feedback, and recommendations to internal teams to improve Blackboards ability to respond to customer challenges (5%).
  - o Sharing better ways to attend to client based on client feedback, response times, quality of response and client understanding of the issue or challenge to be solved.
- Developing and delivering responses to RFPs/RFIs on personalized solutions (5%).
  - o Expanding scope regarding services and answers to related questions of scope, resources, and deployment.
- Developing proposals that accurately articulate client opportunities and challenges and effectively design specific solutions (15%).
  - o Creation of ppt proposals, documents for sales pitch, statements of work revision and creation.
- Working with Sales, Sales Effectiveness, Product Management, and Solutions Delivery teams to train Sales representatives on the most effective techniques to identify opportunities and progress those opportunities to close (15%).
  - o Sharing client understanding and cultural context of the current situation at the institution of the why of the solution and how it will be better for the client and our company to close the deal. Considering product and service knowledge and collaborating with Client experience to identify the right need with a client centricity and sales perspective combined.

35. Plaintiff Anthology also submitted a letter from Ms. Pavon Galeas's proposed manager at Anthology in the United States as part of the RFE response. This letter incorporated and expanded upon the detailed description of job duties for the Director of Business Development in the initial letter. Exhibit 4. Those job duties were:

- Serve as the liaison between Field Operations and the PMO/Delivery Practices (5%).
  - o Collaborate and actively participate in meetings with the corresponding teams to align delivery practices based on the client needs, align methodology and day to day operations per type of client and its expectations.
- Understand the needs and expectations of targeted higher education institutions (12%).

- - Deep involvement with the region and institutions of the Ed-tech market and related companies understanding our competitions vs. client needs.
- Forecast and mitigate prospect concerns related to project implementation and governance (5%).
  - Provide recommendations to internal teams based on data on how to manage the client understanding and expectations. Having a good knowledge of the institution strategy and main stakeholders.
- Respond promptly to prospect needs and communicate with confidence and passion using domain and implementation expertise (10%).
  - Maintain active training and understanding of our solutions and services to share with confidence and context our expertise with main stakeholders of the institution and how this relates with education and institutional vision.
- Collaborate effectively with the Anthology proposal team to produce high quality RFP responses (5%).
  - Provide alignment of what we can offer vs what we can deliver based on the client expectation and their need. Align internal teams to respond accurately under our scope.
- Participate in the preparation and delivery of demos, presentations, and contract negotiations (12%).
  - Active participation for correct services scoping considering client needs and expectations of what our solutions offer.
- Establish and maintain reference lists across regions, solution areas, and other criteria as defined (12%).
  - Actively participate on global initiatives and references between markets to share best practices and align sales, field operations, and delivery teams on our global vision and criteria to follow in the specific region we are working in time.
- Participate in recurring regional sales team meetings (2%).
  - Assist recurrent meetings to forecast pipeline of services in the market and align strategy to current sales deals.
- Participate in conferences and webinars as needed (5%).
  - Represent the market in regional events positioning our services and solutions and how it relates to education and our institutions. Sharing best practices and use cases in which our institutions can benefit.
- Participate in project onboarding and kickoff activities, as needed (1%).
  - Attend client meetings to maintain alignment with the presales process and delivery process based on client needs.
- Assist in professional services' capacity planning and resource assignment through the development of a demand model, based on sales pipeline (15%).
  - Deep knowledge of current operation, scope, and model per service in the region to make sure to develop and propose a model that can work internally and for our clients to meet sales targets.
- Reach back to closed deals to ensure alignment of the client implementation experience to commitments expressed during the sales process (5%).
  - Attend internal and client meetings to maintain alignment of our processes and expertise of what has been contracted.

- Engage in the continuous improvement of project onboarding and delivery (1%).
    - Propose new ways of providing a better delivery process based on our client expectations and benchmark ways to innovate in this area.
- Stay apprised of industry trends and competitor win-strategies in the area of project delivery (1%).
    - Research about market trends in the education and related companies to stand out with our clients providing better project delivery and align to continuous improvement strategies that will help us better serve in what we do.
- Develop and execute a growth strategy for PS Business Development team (7%).
    - Propose and execute collaboratively ideas that could be offered in the market based on pipeline, benchmark, client needs and that will benefit us from an innovation standpoint.
- Manage assigned resources (e.g. Solutions and Delivery Manager) (2%).
    - Work closely with different members of Solutions and Delivery to attend our clients and confirm the right services scoping we can meet.

36. Plaintiff Anthology also included the following documents in response to the RFE:

- Detailed job descriptions and requirements for other individuals in Ms. Pavon Galeas's department.
- Certifications that Ms. Pavon Galeas has obtained throughout her career.
- Proposed organizational chart for the U.S. role. Exhibit 4.

### *USCIS' Denial of Plaintiff Anthology's L-1B Petition*

37. On March 10, 2023, USCIS denied Plaintiff Anthology's L-1B petition. Exhibit 5. The decision makes fundamental factual errors by ignoring significant evidence on the record and is based upon clear errors of law.

38. USCIS denied the L-1B petition stating that the Business Development and Innovation Manager role with Blackboard Brazil and the Director of Business Development role with Plaintiff Anthology in the United States do not qualify as utilizing specialized knowledge, as well as erroneously determining that Ms. Pavon Galeas herself does not possess the necessary specialized knowledge.

39. The statutory definition of "specialized knowledge" is "special knowledge of the company product and its application in international markets or . . . an advanced level of knowledge of processes and procedures of the company." 8 U.S.C. § 1184(c)(2)(B).

40. The regulations at 8 C.F.R. 214.2(l)(1)(ii)(D) further define specialized knowledge as "special knowledge possessed by an individual of the petitioning organization's product, service, research, equipment, techniques, management or other interests and its application in international markets, or an advanced level of knowledge or expertise in the organization's processes and procedures."

41. Since neither the statute nor the regulation defines "special" or "advanced," USCIS applied leading dictionary definitions to the statutory and regulatory requirements. It defined "special" as "surpassing the usual" or "noteworthy" and "advanced" as "greatly developed beyond an initial stage." These definitions were applied by USCIS to require L-1B beneficiaries to possess:

    - Special knowledge, which is knowledge of the petitioning organization's product, service, research, equipment, techniques, management, or other interests and its application in international markets that is distinct or uncommon in comparison to that generally found in the particular industry; or
    - Advanced knowledge, which is knowledge of or expertise in the petitioning organization's specific processes and procedures that is not commonly found in the relevant industry and is greatly developed or further along in process, complexity and understanding than that generally found within the employer.

42. As previously noted, in the initial petition submitted to USCIS, Plaintiff Anthology submitted over 270 pages of evidence supporting the specialized knowledge capacity.

43. In the RFE response, Plaintiff Anthology submitted more than 200 additional pages of corroborating evidence to support the specialized knowledge capacity of the two roles and Ms. Pavon Galeas.

44. The evidence included emails and presentations showcasing how Ms. Pavon Galeas has led and managed over thirty projects for over 100 institutions throughout Latin America. Given the important role Ms. Pavon Galeas played in these projects, she demonstrated special knowledge of Plaintiff Anthology's products and services, as well as their application in international markets, specifically Latin America. Ms. Pavon Galeas also has an advanced knowledge of international regulations, which is particularly noteworthy, as it applies to the educational institutions Plaintiff Anthology works with.

45. Under 5 U.S.C. §§ 702 and 704, Plaintiff Anthology has suffered a "legal wrong" and has been "adversely affected or aggrieved" by agency action for which there is no adequate remedy of law.

46. Plaintiff Anthology has been deprived of Ms. Pavon Galeas' advanced and special knowledge of its products in the international market. Her expertise will allow the U.S. entity to expand its offerings based on her knowledge of the international marketplace.

## CAUSE OF ACTION

**Violation of the Administrative Procedure Act, 5 U.S.C. § 701, et seq., the Immigration and Nationality Act and its Implementing Regulations**

47. Plaintiff re-alleges and incorporates by reference, as fully set forth herein, the allegations in paragraphs 1-46 above.

48. Plaintiff is entitled to review by this Court pursuant to 5 U.S.C. §§ 701-706.

49. A reviewing court shall "hold unlawful and set aside agency action . . . found to be— arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A).

50. Defendants denied Plaintiff Anthology's L-1B petition on the ground that the evidence in the record was "insufficient" to establish that Ms. Pavon Galeas possessed specialized knowledge and that the Business Development and Innovation Manager role in Brazil and the Director of Business Development role in the United States require such specialized knowledge.

51. Contrary to Defendants' decision, Plaintiff Anthology submitted sufficient evidence to meet the "preponderance of the evidence" standard required by USCIS' own policies based upon applicable case law, and adequately demonstrated the position satisfied the statutory definition of "specialized knowledge." 8 U.S.C. § 1184(c)(2)(B).

52. Plaintiff Anthology's evidence also demonstrated the position satisfied the regulatory definition for demonstrating "specialized knowledge" based on the plain language of the regulation, where no specific criteria are provided. 8 C.F.R. § 214.2(l)(1)(ii)(D).

53. Defendants failed to properly consider all evidence in the record; reached factual conclusions as to the regulatory definition unsupported by any evidence in the record; misconstrued the applicable regulations; impermissibly imposed evidentiary requirements beyond those required by Congress and applicable case law; and erroneously concluded that Plaintiff Anthology had not met the specialized knowledge criterion for the L-1B.

54. Defendants may, in response to this complaint, issue a further request for evidence to delay the proceedings in this litigation. Such a request, if issued, would be unreasonable as USCIS, between its initial review of the petition and review of Anthology's RFE response, has already had two opportunities to review the extensive evidence provided

in support of the instant petition, showing Plaintiff Anthology has met its burden of proof.

55. Defendants' errors, singly and in combination, were arbitrary, capricious and in violation of the law. Consequently, Defendants acted arbitrarily, capriciously, and contrary to the law in violation of the APA, the INA, and the immigration regulations by denying Plaintiff Anthology's L-1B petition.

**FINAL AGENCY ACTION AND EXHAUSTION OF REMEDIES**

56. Defendant issued a Request for Evidence ("RFE") on November 21, 2022, and Plaintiff Anthology responded on February 24, 2023, before the end of the sixty-day grace period ending on April 17, 2023. Defendant subsequently denied Plaintiff Anthology's L-1B petition on March 10, 2023. Plaintiff has properly filed this action before this Court.

57. The denial is arbitrary and capricious. A final agency action is arbitrary and capricious where:

> USCIS has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before USCIS, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.

*Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983).

58. The denial is arbitrary and capricious because the denial runs counter to the evidence in the record as Plaintiff Anthology provided sufficient evidence to satisfy and meet the "specialized knowledge" criteria required by the statute and regulation.

59. Defendants' denial is substantially unjustified, and this Court should set it aside, remand the case to USCIS, declare Plaintiff met the specialized knowledge criteria

required by the regulation, and instruct the Agency to readjudicate and approve the L-1B petition filed on behalf of Ms. Pavon Galeas.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court:

1. Declare that Defendants' determination that evidence submitted by Plaintiff Anthology was insufficient to establish that Ms. Pavon Galeas qualifies for specialized knowledge L-1B status was arbitrary and capricious, and not in accordance with law, in violation of the APA, 5 U.S.C. § 706(2)(A), the INA and the regulations.

2. Vacate the denial of Plaintiff Anthology's L-1B petition and remand this matter to Defendants with instructions that, within ten days of the date of the Court's Order, they approve Form I-129, Petition for Nonimmigrant Worker, filed by Plaintiff Anthology on behalf of Ms. Pavon Galeas.

3. Award reasonable attorneys' fees and costs pursuant to the Equal Access to Justice Act, 28 U.S.C. § 2412(d), 5 U.S.C. § 504, or any other applicable law.

4. Grant such other relief as the Court deems just, equitable and proper.

Dated: August 15, 2023

Respectfully submitted,
/s/ Anabel Nataros
Anabel Nataros (Florida Bar # 116154)
Meltzer Hellrung LLC
1 E. Wacker Drive, Suite 3700
Chicago, IL 60601
Telephone: 312-883-8999
Fax: (708) 575-2139
Email: anataros@meltzerhellrung.com
*Attorney for Plaintiff Anthology*